EOGEES, J.
 

 On September 18, 1923, Charles V. McMillan, Joseph C. March, and various other parties, all residents of the state of Wisconsin, brought suit against Leonard Lorimer, a citizen of the state of Illinois, in the Eighth judicial district court for the parish of Catahoula, to obtain judgment for the sum of $525,000, with interest, as the balance due under an alleged contract of sale of the lands described therein, and for the seizure and sale of said lands to enforce petitioners’ lien and mortgage thereon.
 
 *403
 
 On September 24, 1923, the same plaintiffs, with the exception of Joseph O. March, instituted another suit in the same court against the same defendant to enforce another and similar contract, but covering different lands, entered into on the same day. Joseph 0. March was not a party to this second contract. The judgment sought in this case was for $27,000.
 

 A curator ad hoc was appointed to represent defendant, but he employed special counsel, who filed' exceptions and an answer in his behalf in each suit.
 

 By agreement both cases were transferred to, and consolidated for trial in, the Fifth judicial district court for the parish of Rich-land. In the meantime two of the plaintiffs died, and their heirs and legal representatives were made parties.
 

 All of the defendant’s exceptions were referred to the merits, and the cases were then taken up for trial. After submission they were taken under advisement, and judgment was finally rendered in each case sustaining, “on account of the law,” the exception of no cause or right of action. Plaintiffs’ suits were accordingly dismissed, and they have appealed. By another agreement, the consolidation of the causes was extended for the purposes of the appeal, and only one transcript containing the pleadings and evidence pertinent to each case was lodged in this court.
 

 We do not find any error in the ruling of the court below in sustaining defendant’s exception. Plaintiffs brought their actions on the theory that the contracts in question are executed and not executory agreements; that they are actually contracts of sale and not merely agreements to sell. We think they are wrong in thus interpreting the agreements. An inspection of the instruments, copies of which are annexed to and made a part of the petitions, shows that they are not designated as sales, and are not in the language or form of sales. They are not, and do not purport to be, translative of property, but are conditional agreements to sell the lands described therein upon compliance by defendant with the conditions stipulated. These conditions are, that the purported vendors are to furnish the purported purchaser with abstracts of good and merchantable title of the lands, free of liens and incumbrances, except taxes; that the alleged purchaser shall he required to take only such portions of said real estate the titles to which are good and merchantable, or which can be perfected within a period of one year; future delivery of deeds is contemplated ; occupancy and possession by the prospective purchaser, not as owner, but as a tenant by sufferance, is stipulated; a tenant’s obligation as to repairs is provided for, and further provision is made for his removal as a tenant holding over; the right of the alleged purchaser to cut timber is restricted to selected tracts of not less than 160 acres each on the basis of an agreed price of $45 per acre, to be paid for previous to any cutting, and after notice to the prospective vendors of said selection, separate deeds to be made for each tract thus selected and paid for.
 

 The authorities are numerous that an agreement such as the ones in question here is not a sale but a mere promise to sell; that such a promise amounts to a sale only in the sense that the contract gives the parties the right to demand the specific performance thereof. The prospective purchaser has the right to enforce the transfer and delivery, and the prospective vendor has the right to compel the acceptance of the property and the payment of the purchase price. See Civ. Code, arts. 2013, 2349, 2462; Herold v. Stockwell, 32 La. Ann. 949; Todd v. Insurance Co., 34 La. Ann. 63; Baldwin v. Morey, 41 La. Ann. 1105, 6 So. 796; Collins v. Desmaret, 45 La. Ann. 108, 12 So. 121; Capo v. Bug
 
 *405
 
 dahl, 117 La. 992, 42 So. 478; Talbot v. N. O. Land
 
 Co., 143
 
 La. 263, 78 So. 553.
 

 Counsel for plaintiffs cite Girault v. Feucht, 117 La. 276, 41 So. 572, and Lehman v. Rice, 118 La. 976, 43 So. 639. These cases are against and not in favor of their contention. They support the general rule to which we have hereinbefore referred. Counsel for plaintiffs also cite State v. Whited & Whelis, 104 La. 125, 28 So. 922, Adams Machine Co. v. Newman, 107 La. 703, 32 So. 38, and Barber Asphalt Paving Co. v. St. Louis Cypress Co., 121 La. 151, 46 So. 193. We do not find any of these cases appropriate to the present issue. In the first of said cases, the subject of the agreement was 100 shares of the capital stock of the-plaintiff company. The court found that the agreement constituted not only a sale of the stock, but a pledge of the same to secure the payment of the price by delivering to a third person agreed upon by the parties. In other words, that the transaction was a completed sale, in which the certificate of stock and the notes representing the purchase price thereof were to be held in escrow until the notes were paid. The other two cases involved the interpretation of so-called conditional sales of personal property by which the movables are to be delivered to the vendee, who is at once to become bound for the price while the vendor continues to be the owner of the property until the price is paid; the 'court holding that such contracts were not legally possible under the law of this state.
 

 In his answers, filed with reservation of his exceptions in the court below, defendant admitted the execution of the contracts, but denied the interpretation placed thereon in plaintiffs’ suits. He also denied that he had defaulted in his obligations, and averred that plaintiffs had breached the contract by failing to deliver 15 abstracts of title covering the lands described; that on May 28, 1920, his counsel had rejected title to all büt 4Ó acres of said lands, and had called upon plaintiffs to cure and perfect said titles within 12 months as agreed upon, which they had failed to do. He prayed for the annulment of the contracts and for the return of $75,-000 and $5,000 which he had paid thereunder.
 

 The judgment of the court below was silent concerning these demands of defendant, and in this court he has filed an answer to ■plaintiffs’ appeal, in which he prays that said judgment be amended in conformity with his said reeonventional demands.
 

 As the record of this case is presented, we find ourselves unable to consider and pass upon defendant’s reeonventional demands. The object of the articles of the Code of Practice authorizing demands in re-convention is to enable the parties litigant, at the election of the defendant, to adjust their conflicting claims in one action, thereby avoiding a multiplicity of suits. If defendant avails himself of the right, plaintiff cannot discontinue his suit so as to defeat defendant’s demand. On the other hand, where defendant causes the dismissal of the main suit merely by showing that plaintiff has mistaken his remedy, he cannot insist upon a trial of the demand in reconvention afterward. If this was not so the purpose of the Codal articles would be frustrated, since the conflicting claims of the parties would remain unsettled, the judgment of dismissal not constituting res judicata, and plaintiff would be relegated to another action to enforce his rights. In Warfield v. Hamlet, 28 La. Ann. 814, a situation similar tó the one with which we are now dealing was presented. There, plaintiff and her attorneys having failed to appear on the day fixed for trial, the suit was dismissed on motion of the defendants. The reeonventional demand for damages was then taken up, resulting in a judgment in favor of the reconveners. On appeal this judgment was set
 
 *407
 
 aside, the court holding that defendants could not dismiss plaintiff’s suit and thereafter try their demand in reconvention.
 

 In the present case the judgment sustaining defendant’s exception of no cause or right of action places the parties in the same situation they were in before the inception of the suit. This leaves the door open to a further investigation and adjustment of their respective rights. With this understanding, and so holding, we have concluded to affirm the judgments herein appealed from.
 

 Judgments affirmed.
 

 THOMPSON, J., recused.
 

 O’NIELL, O. J., concurs, except in the judgment on the demand in reconvention.